Marsha Chen, please proceed May it please the Court, Marsha Chen for the State Defendants and I'm joined by Ellen Range I'd like to reserve five minutes for rebuttal And I'll try to remind you, if you forget, but you need to watch the clock yourself Thank you, Your Honor We'll do our best The State's police power is at its apex when it regulates the health and safety of its residents GEO believes it can disregard these laws even though the Ninth Circuit, the State of Washington, and its own federal contract require compliance with state health and safety laws By enjoining HB 1470, the District Court erred in two ways First, HB 1470 does not discriminate against GEO, and the Ninth Circuit's recent decision in Nawazhar confirms it Second, GEO's challenge to Sections 2 and 5 are not justiciable I'll start with impermissible discrimination There is no question that GEO's Tacoma facility was the impetus for the Washington Legislature A never-ending series of hunger strikes and abhorrent conditions at the facility spurred the Legislature into action But the Legislature also ensured that HB 1470 is not limited to GEO, lest this happen again It applies to all private detention facilities, regardless if it contracts with the federal government, state government, or the local government The fact that it only applies to GEO as a practical matter today is not enough for impermissible discrimination North Dakota says as much, and Nawazhar confirms it In North Dakota, the Supreme Court considered a state law that specifically required out-of-state liquor wholesalers to specially label and report its liquor sales to a federal military enclave There, the plurality held there was no impermissible discrimination given the greater regulatory context in North Dakota North Dakota had a comprehensive liquor regulation system that was meant to encourage temperance If I can interrupt you for a moment to ask you this There appears to be some requirements in HB 1470 that I don't see imposed on any other facilities For example, the provision of fresh fruits and vegetables, the requirement that HVAC systems be adjustable by certain rooms and areas The provision of free hygiene products and the provision that talks about civil penalties, which are quite severe What do we do with those provisions? Your Honor, two points First, under Nawazhar, the proper comparator isn't whether or not HB 1470 treats GEO's Tacoma facility, the private detention facility that contracts with the federal government, the same as congregate care facilities The proper comparator is state private detention facilities And here, much like North Dakota, state private detention facilities are subject to much more onerous regulations They are banned from existing at all But to the extent that the Court wants to look to congregate care facilities, they are actually identical For example, on the temperature control piece, which is not included in GEO's chart, WAC 246337-135 is the exact same temperature control requirement that is included in HB 1470 As for the hygiene requirements, our chart in our opening brief indicates there's comparable requirements for congregate care facilities and for both hygiene products and for fresh fruit and nutritious meals But the point is, the point made in Nawazhar, that the right comparator doesn't depend on whether or not, at the moment, there is another facility that may apply, that HB 1470 might apply to There, Washington's Minimum Wage Act exempted state-run facilities, but otherwise applied to all private detention facilities, whether it contracted with a federal government, state government, or local government And it was enough under Nawazhar that it would apply to a state detention facility if one were to exist So intergovernmental immunity does not turn on... If we don't accept that argument, is one potential solution to simply excise the requirements that are not imposed on other facilities? Certainly. We certainly disagree with the District Court's order that it struck down the entire provisions I think United States v. California shows that. United States v. California upheld certain provisions, but otherwise struck down ones that were overly burdensome But we would disagree that HB 1470 is overly burdensome on GEO's Tacoma facility here Again, the Dawson v. Steger and Nawazhar both indicate that it's the letter of the law that is significant And the letter of the law under HB 1470 is that HB 1470 applies to all contracted facilities, whether with the federal government, the state government, or local governments Let me ask you this. It's a variation of the question that I think Judge Nguyen was asking you To the extent that the comparators are either private residential facilities in the state or private involuntary civil commitment facilities The regulations are pretty similar to the regulations imposed upon the facility in Tacoma Correct Is your argument that the differences are really de minimis? No, Your Honor, it's not de minimis. They're actually comparable and similar No, no, wait a minute. Similar is not identical. That is to say there are small differences So what do I do with the differences? Do I say I can disregard them because they are de minimis? There was a suggestion from Judge Nguyen that maybe we should excise them So what are we supposed to do with that? What's your position? Our position is that this is no different from United States v. California In United States v. California, there was provisions in the inspection requirements that suggested there was due process regulations And in there, the Ninth Circuit accepted the idea that those were no different from the regular inspection requirements for other facilities For inspections for conditions of confinement So I think that they are comparable and they are different I'm sorry, they are comparable and what? I apologize. They're comparable and nearly identical So to the extent there is any difference So I suggested the phrase de minimis and you so far are not embracing that? I'm not embracing that because in United States v. California, for intergovernmental immunity purposes, there is no de minimis exception to intergovernmental immunity So you want to say substantially identical rather than de minimis? Your Honor, I think they are substantially identical and I want to make sure No, I understand that, but maybe we're just fussing over words Okay, but your position is they are substantially identical and absolute identity is not required? That's your position? Correct, to the extent they are no different But you pointed out correctly that there's no de minimis exception So we could do something along the lines of the extent that they're identical, that's fine And to the extent that they impose greater burdens, then that's not acceptable But it doesn't mean that we have to strike down the entire provision We do not have to strike down the entire provision And I want to make sure that I'm clear HB 1470 takes the same regulations that apply to congregate care facilities And to the extent they apply, they apply them to private detention facilities They're all taken from various regulations from congregate care facilities So for example, I think your Honor referred to civil penalties Residential treatment facilities are subject to civil penalties under RCW 71-12-545 Psychiatric hospitals are also subject to civil penalties WAC 246-322-025 So these were all provisions that were taken from congregate care facilities But it was only a subset So actually HB 1470 still treats private detention facilities better than other congregate care facilities Congregate care facilities are subject to much more extensive regulations regarding service animals, regarding healthcare records, regarding lighting and systems and things like that And they can be enforced by the county prosecutor, for example But those regulations were not adopted for HB 1470 So HB 1470 only provides a subset of the regulations that apply to congregate care facilities So they're actually regulated better than other congregate care facilities to the extent that is the comparator at all By better, you mean regulated more lightly? Correct I also want to make a point and address Judge Fletcher's opinion in Noisar to suggest that criminal prisons and DOC-run facilities are not the right comparator And that's for the several reasons that Judge Fletcher identified in Noisar There's legal differences between a public facility and a private facility But I also want to highlight another difference Geo's Tacoma facility involves civil detainees, not those incarcerated for a crime Jones v. Blanas confirms that the Eighth Amendment's cruel and unusual punishment standard does not apply for civil detainees So the civil detainees at the Geo's Tacoma facility are owed more than what's the minimal civilized necessity of life's necessities So the standards are different than publicly run facilities Do we have any numbers at all as to what's going to be the ultimate fate of those who are incarcerated? I know that some will end up being deported, or in the modern word, removed And some will be held to have a right to be here Do we have any numbers as to the proportions of those two categories? Not in this record, but there's a significant that will not be deported That's not in the record, because this is based on a preliminary injunction But there's certainly, the folks in the Geo's Tacoma facility include asylum seekers They include legal permanent residents They include DACA recipients, who all have legal status here Or at least claim that they do, and may end up being adjudicated and such Correct, Your Honor, correct And I think it's very clear Specifically, Counsel, what's your position on Section 6? Section 6 on civil penalties? The civil penalties Are there any other comparable law? Yes, Your Honor, the comparable laws are the ones I identified Psychiatric hospitals, for example, are penalized $1,000 to $10,000 per violation Geo's HB 1470 is $1,000 per violation And that citation is WAC 246-322-025 I want to be clear, without HB 1470 Geo's Tacoma facility is the only private congregate care facility that lacks separate state regulation Every other congregate care facility is regulated by the state So HB 1470 is an act of parity, not discrimination It completes a missing puzzle piece of state regulation for congregate care facilities I'd also like to be clear That that does not mean the state can impose whatever burden it wants Newsom provides a backstop The state can't regulate a private contractor in such a way that would control federal operations HB 1470 does nothing of the sort Section 2's requirements are basic They require infection control, basic hygiene And all of its requirements are consistent with federal standards To the extent there are any differences between the congregate care facilities and HB 1470 I would note that, again, one size does not fit all The legislature only took a subset of the regulations that apply to congregate care facilities And applied them to private detention facilities Section 10 merely exempts those that are already regulated under other separate laws I want to make sure I reach the standing question Unless your honors have any questions on preemption or direct regulation On those points, I would just note that the United States does not join GEO on its defense On its claims of preemption and direct regulation But I'd also like to reach the standing GEO does not have standing to challenge Section 2 Because DOH has only just started its rulemaking And Whole Women's Health v. Jackson precludes justiciability on Section 5, the private right of action There is no redressability for Section 5 Because the state defendants are A.G. Ferguson and Governor Inslee Yeah, 5 is easy. Tell me more about 2 Sure. Standing is not dispensed in gross And to be clear, the state has tried to enforce Section 3 of HB 1470 And we're not challenging standing on Section 3's provisions It is Section 2 that GEO lacks standing for For example, GEO now makes three arguments for why it can challenge Section 2 First is its HVAC system It suggests that Section 2's HVAC requirements will require $3 million in investments But GEO's own declaration indicates that its HVAC system is consistent and compliant with Section 2's requirements Because it can be controlled by zone That's GEO's own submitted declaration As to arguments it makes in briefing regarding fresh fruits and the provision of toiletries GEO never alleged that it's not providing fresh fruit or toiletries to the detainees That's not in the complaint And if anything, the PB&DS suggests that GEO is providing fresh fruit and toiletries And those citations are 6 S.E.R. 1140 and 5 S.E.R. 1070 So there is no controversy here There's no concrete plan to violate Section 2 And DOH is only in the nascent stages of rulemaking I don't want to interrupt your argument But I thought you said you wanted to save five minutes Thank you, Your Honor You're down to 440 I'll reserve Good afternoon And may it please the Court I'm Dominic Dray And with Chris O'Brien, I represent the appellee, the GEO Group I should note that five of these minutes actually belong to the United States Washington adopted HB 1470 to circumvent this Court's decision in Newsom And like the state law in Newsom, HB 1470 restricts ICE's statutory discretion to select detention facilities that it deems appropriate And like the state laws in Newsom and Boeing HB 1470, quote, dictates the manner in which the federal function is carried out, end quote That's page 758 from Newsom That is intergovernmental immunity to a T That is the direct regulation prong To make matters worse, it's also discriminatory The only facility to which the law applies And it's not by accident, it's absolutely by design Is the Northwest Immigration Processing Center That is accomplished by exclusion It is true, you know, my friend on the other side points to the letter of the law controlling It is true that the statute doesn't expressly target But it carves out everybody else Now, are you saying in this argument That in order for us to be allowed to compare what's happening with your facility To these other facilities, that they all have to be in the same statute? They have to be the same standard, I don't care if it's in two different statutes Okay, well then, we've got these other regulations For things that are comparable So you better address that rather than say that this is sui generis Yes, I think your honors and Judge Wen's line of questioning was exactly right Channeling the court in the California case, United States versus California There is no de minimis exception If the standard is different The United States Supreme Court, it's a plurality But in North Dakota says the law must burden the two equally Is the exact quote There's no de minimis exception So unless they are exactly the same burden And this is where the chart is somewhat helpful The first two columns of our chart relate to the disparate burden They are not the same burden There's no de minimis exception So what are the differences? So what are the differences that you regard as material And then disabling to the other side? Yes, every one of them, it's pages 38 through 44 of the brief List a few We talk about, you know, for example, the issuance of toiletries The issuance of fresh fruit versus frozen and so forth The HVAC requirements They're all traced out in the chart And there's no contest, by the way I mean, please pay attention The state always says it regulates on the same sort That's a quote from the reply brief at 8 and 9 Or today we heard that they're comparable Or they're not overly burdensome None of those is the standard It has to be exactly the same There's no de minimis exception And that's necessary because otherwise It puts courts in the impossible position of deciding How much a state can discriminate against the federal government This is a supremacy clause doctrine at the end of the day And there's just no room for that Now, you know, the state points to their preferred comparators But it's notable that those comparators are also exempted From the statute itself So, for example, the state points to involuntary civil detention That is exactly what we have here This is involuntary civil detention, as the court pointed out But it's a totally different rule You have the Involuntary Treatment Act You say totally different rule Tell me what you mean by totally different It's not the same I should say it's not the same, Your Honor And whether or not there are regulations on the same subject Does not matter They have to be identical Identical in the sense of fresh fruit As distinct from frozen fruit Frozen, dried, canned Yes And under the PBNDS, we're allowed to do And do serve the former And under this, you're not So it's a different law, is the point Now, the discriminatory prong is probably the easiest one And I think the district court went that way In light of the U.S. Supreme Court's decision in 2022 In United States versus Washington For which, by the way, there was no state contractor comparator The other side sort of had I refer to it as the grand loophole The idea that as long as the state Doesn't use a contractor for something It's allowed to regulate federal contractors All day long in any way it wants to That's not the law In United States versus Washington The Supreme Court just a few years ago Explained, and that's the Hanford cleanup case By way of reminder It points to contractors for the federal government And the court notes that it, quote Imposes, it, the statute Imposes upon the federal government Costs that state or private entities do not bear So it doesn't require that there be That you can eliminate using state contractors And then you can do to the federal government And its contractors whatever you want On that point, that gets to the direct regulation prong Which I think Newsom and Boeing end this case And the district court Counsel, let me ask you this Assume that this is not a direct regulation case Would you concede that to the extent The requirements here mirror requirements For other facilities that that would be constitutional? No, they have to be the same Right, that was the premise of my question So to the extent that the requirements here Mirror requirements in other facilities That would be constitutional And just to be sure that I'm following Your Honor's question You're assuming that somehow That would not be direct regulation? Well, because there are provisions here That I see apply across the board So, for example, the provision of nutritious meals And a balanced diet Setting aside the question of whether The prisons is the appropriate comparator Or these other facilities Is the appropriate comparator When you track the requirements Facility to facility A lot of it is the same Now, some of it is different Then my next question was going to be What do we do with those differences? I ask your opposing counsel Then I'll ask you the same thing But I do want to start with the premise That the extent the requirements are the same You don't have a problem with that, right? No, no, that has a whole host of other problems Including direct regulation So, I want to be clear My hypothetical actually is Let's assume this is not a direct regulation case We're going to go on discrimination Whether it imposes greater burdens On your client Than it does on other facilities I suppose that's right But we do, I mean States aren't allowed to directly regulate To the extent that it isn't Can we just excise the requirements That would impose a greater burden On geogroup? Not greater, different No, I mean, I don't see anything in here That would allow the court to sever those I think the whole thing rises and falls together I mean, no one has briefed that So I'm not sure I don't want to commit to an answer on that, Your Honor But we can't just ignore The other half of intergovernmental immunity Or for that matter, preemption Which prevents a state From telling the federal government How to carry out its work And that is why I say That this case is Boeing and Newsom In perfect harmony And the district court did an interesting thing To avoid Boeing It said that Well, it's been briefed In the extent that that's what We said in U.S. versus California, right? To the extent that the requirements Duplicate the requirements elsewhere It's fine And if it No, no Excess of the requirements elsewhere Then it's not okay I think Your Honor is thinking about The discrimination prong of IGI The state cannot tell the federal government How to carry out its federal functions So as in Newsom Where the federal function was the selection of Facilities for detention That the ICE deems appropriate That's the statutory term 8 U.S.C. 1231 G1 That is the bedrock I mean, if the court reads two cases in this case Please make them Newsom and Boeing Because Newsom explains that You didn't mention Nuazzar, did you? No, well, as Your Honor knows Nuazzar is the subject of a petition for Rehearing on Bach I'm quite aware of that I'm very familiar with Newsom Yes, I know, it's a masterpiece And in Newsom, I think The majority made it very clear That there is considerable room For states to enforce Their generally applicable laws Against federal contractors And the regulation relating to health and safety Is something that's been well recognized Including in Newsom As within the state's police powers So I don't think Newsom is as broad As you would have us accept So there is a line of cases And Newsom acknowledges this line of cases That relates to generally applicable laws And arguably, Nuazzar is one of these laws That merely increase the cost So these are your tax cases And Newsom very adroitly Distinguishes the tax cases At pages 755 through 56 Boeing does it at page 839 Those cases merely increase cost And so the courts have said If it merely increases the cost By having a tax of some sort Or perhaps a minimum wage Then that is It's okay to regulate the federal government If you're merely increasing their cost The other side of that coin And this is the part of Newsom To which I call the court's attention Is that the state cannot Let me get the quote here Prohibit ICE from exercising its discretion To arrange for immigration detention In the privately run facilities It has deemed appropriate And then the court goes on That's at page 761 California would have us hold That intergovernmental immunity Never applies to generally applicable State regulation of a federal contractor Even when the regulation Would control federal operations That's page 758 That is the most important sentence From this court's precedent For today's case Newsom, page 758 Because it applies exactly here California would have had this court say That as long as it's a neutral law Generally applicable Excuse me Generally applicable state regulation Would be allowed And this court rejected it Because it would go to The manner in which Not the cost of carrying out Federal operations But the manner in which they're discharged These HB 1470 regulates The manner in which The federal function is carried out By dictating, for example Everything from HVAC to toiletries to fruits And that is offensive To intergovernmental immunity So as distinguished from the tax cases And that's a very important one The district court, by the way Got off the rails on this By concluding inaccurately That somehow The regulation in Boeing That governed the contractor's performance Had been adopted by Congress When in fact The statute in Boeing The Atomic Energy Act Requires the quote-unquote Safe handling and disposal Of nuclear waste Then the Atomic Energy Commission And this is just tracking the INA to ICE Then the agency level Promulgates detailed rules Because Congress never adopts Something like the PBNDS Those rules in turn Governed how the contractor would perform They are exactly tracking each other The state, sort of backfilling For the district court Says, well, in Boeing The waste belonged to the federal government It was their mess in the first place That is analogous to saying That the government is the one Who has these detainees That need to be housed and cared for GEO doesn't go out and detain people GEO just takes people Whom the federal government has detained And, you know, people can have Reasonable policy disputes About the wisdom of whom to detain And for how long But those decisions are, of course Left to the federal government I do want to take... We're running out of time, counsel Can I have you briefly address The question of standing on Section 2? Sure Because the regulations Haven't been enacted yet Yes, we don't need to wait For the regulations This is, as Your Honor notes A pre-enforcement challenge The standard under this court's Flower world precedent Is the, quote-unquote Realistic danger of enforcement In this case, you know, the state To their credit concedes That they're trying to enforce Section 3 The inspection provision Which, by the way, runs headlong Into the PBNDS You can see that at ER 670 T as in tango But they're enforcing The inspection requirement For the purpose of enforcing The substantive provisions They adopted this law Targeting exactly one facility In the state For the purpose of regulating The NWIPC The court doesn't have to put Its head in the sand I mean, the realistic danger standard This is not some sort of Speculative exercise Or consider the Supreme Court's decision In Virginia v. American booksellers Where it notes that If a statute is aimed At a particular person Then that person has standing To bring the pre-enforcement challenge This is Virginia v. American booksellers How do we deal with the following? We do not yet have regulations Promulgated under Section 2 It seems to me entirely possible That the regulations promulgated When we finally get them May excise from the regulations Precisely the differences To which you are objecting What do we do with that possibility? Well, Your Honor, first of all That is far more speculative Than G.O. being the recipient Of an enforcement action But if they were to excise those Then I guess it would be A case for potential mootness Rather than ripeness So they could maybe moot out Our controversy But the controversy Is the proper pre-enforcement challenge I do want to address Well, pre-enforcement challenge But somehow A pre-enforcement challenge Works only when you know What the enforcement's going to be And we don't yet have the regulations Well, we have the statute, Your Honor I mean, don't sell Section 2 short It includes its own raft In fact, what we've pointed to In the chart Is all from the statute It's not from the regulations So we have something there And, you know, we say in the briefs That it would be impossible For them to regulate In a way that didn't run afoul Of intergovernmental immunity So this is, I think Well, wait a minute I'm not sure that's right Because your objection On intergovernmental immunity With the comparison is That there are differences And you say it's impossible For them to regulate So that there are no differences? Well, intergovernmental immunity Includes the differences prong The discrimination prong No, I'm talking about differences Okay, and then it includes The even more obvious direct regulation You see, I disagree with you On that point That it's so obvious Oh, interesting Okay, well If you have a question I'm happy to field it But let me use my waning second To just note that The other side sort of makes These oblique references To a contractual provision That talks about Applicable state and federal laws The district court rejected this In note 11 It's at ER 55 Citing this court's Gartrell decision Which says that Interpreting the exact same term Applicable in a federal contract Applicable means that It is constitutional It cannot be applicable If it's not constitutional And so we wind up At the exact same place Of answering that question Well, I'm sorry to dig Into the next time But applicable means You mean the federal government And GEO cannot contract To do that? You're saying that It's an invalid contract? It's an unconstitutional contract? No, no, no Because I'm just trying To figure out What the meaning Of the contract is Right So to spend Just another few seconds And I don't think That I'm taking The United States time But if so I'll be even quicker about this This applicable argument Is waived for one thing It shows up for the first time On page 31 Of the reply brief The district court Correctly got rid of it It would only apply To the discrimination prong And the contract The question of the contract Is what the party's intent is And maybe, you know Mr. Hinchelwood Can address their view We obviously don't think That it's a waiver Of sovereign immunity Nor could it be And please see The Gartrell decision for that Okay With that I'll let The United States take Thank you Good afternoon, your honor And may it please the court Brian Hinchelwood For the United States The anti-discrimination component Of the intergovernmental Immunity doctrine Forbids singling out Federal contractors And those who are             Who deal with The federal government For unique burdens Not imposed Generally applicably On other people Under state law Here the state enacted A unique statutory regime That applies only To a federal contractor And can only apply To a federal contractor There is no other Entity that could be And saying that Do you disagree That with the proposition Made by the other side That a proper comparator Is state regulation Of, I think we've got A couple of things Private residential facilities And private and Voluntary civil We're not supposed To compare to those Right, your honor I think Because How come we're not Supposed to compare to those Right, so I think Just to be clear I think the state's argument Moves in a few steps And I think the last step As you point out Is a fallback The state sort of says Well, if you're going To do any comparison at all You should do it to These other facilities And I'm asking you You say we're not Supposed to compare to them Why not Okay, so we think The district court Correctly compared To state jails and prisons That's exactly what This court did in California That's not my question My question is Why don't we compare To these that I just listed Right, so first I'll point you first This court's decision In California Where you looked at An inspection regime That applied to Private detention facilities And you said This scheme Is permissible Insofar as it mirrors The scheme Applied to state And local jails and prisons But is impermissible To the extent It exceeds that scheme And applies unique burdens On these contractors With the federal government So I mean It's exactly the comparison This court drew In California And it's exactly The comparison That the district court Properly recognized here Fits with both The statutory scheme That Congress created In envisioning Contracting with facilities Like this one And it also You know Compares apples to apples Right, the types of facilities We're talking about here Are the same types Of facilities That one might use For a jail or prison Or something of that nature The state wants to compare Wants to ask you To ignore What it does For jails and prisons And say No, no, no You should compare this To essentially Hospitals Or maybe The involuntary Treatment facilities Or it's sort of unclear The state itself Doesn't treat All these facilities Identically We're still At cross purposes I don't understand Why these are Improper comparators That is to say These are private contractors Who are Detaining people In a civil facility And you're Why are they Inappropriate comparisons? I think The district court Ran through a series Of reasons Why these things Are different So the purposes Of the detention Are different The reasons behind The detention Are different The intended Effect of the detention Is different And But they're all Civil detainees Is that correct?  I won't Claim categorical Knowledge of state law My understanding From the state's briefs Is that they claim These are all To some extent They are detainees To some extent They are not My understanding Is some of these folks Are there voluntarily In the types of Facilities the state Is pointing to But I think It's also instructive That you know Again When this court Made these comparisons In California It drew exactly The analogy The district court Did here Because it recognized That we're talking About the same Types of facilities You know When It looked at The inspection regime And you have An inspection regime Related claim here It didn't say Well what does California do With respect to hospitals Or With respect to Group homes For work release Or things of that nature It said Jails and prisons Are the relevant comparator And the state hasn't Extended its generally Applicable laws To them In all respects It had in some respects But not all And I think That goes back To a fundamental I'm afraid You still haven't Answered my question I don't understand Why we cannot Make that comparison I think It's I think It would be Analogous comparator That this court Correctly recognized In California itself Which are State jails and prisons Which are I think You know Generally understood To be built To similar standards As facilities like these And compare that And ignore that comparator And instead Look at You know Other facilities And it's not clear to me On what basis We're treating those As apples to apples Well we're treating Them as apples to apples Because they're all Run by contractors Rather than run By the state itself Well your honor That's I don't think The relevant comparison For this particular Analysis When we're talking About the facility Itself And how the state Can choose To regulate These types of  As a matter Of discrimination Analysis I mean The fact that You know That other Facilities Have people Who live in them And the state May regulate Them in different Ways Which again There's no Single State law Here That governs All congregate Living facilities They have Different regulations For states And prisons Different regulations For So we're back To the point Where you think It all ought To be on The same Statute Not on The same Statute Your honor If a state Extends It's Generally Applicable laws To a Particular Federal Facility That's A different Question Under the Discrimination Analysis It might Raise other Concerns About direct Regulation Or preemption But that's Not what The state Did here It enacted A totally Separate Statute That by Design Applies only To GEO And even Today hasn't Told you That things Are the Same And really Makes no Effort In its Brief To say That it's Analogous To what They do For state Jails and Prisons Which was Compared to This court Used in California Itself So I Think Once you've  That point I mean We've obviously At that point Moved beyond The state's Arguments That you Should Ignore The fact That this Only applies To the Federal Contractor And should Ignore The fact That It should Draw a  Based on Hypothetical Contractors Who can't Exist And you've Reached That sort Of last Step Of where Do we Look To draw The right Comparison At that Point Counsel The light's Red Meaning You're Over Your Time However You didn't Get all Your Planned Five Minutes Earlier So there's No problem But we should Come to An end Of your Argument So the rebuttal Can proceed Certainly I mean If there are Further questions I'm happy To answer Them but Otherwise I think I've Covered What I Needed To My Five Minutes Okay Thank You Very Much Thank You No questions Just Your Honor I want To address The question Of whether Or not To excise Excise Provisions Versus Versus Not That may Or not Be Comparable The other Side Suggests That The laws Have to Be Identical United States Versus California Says Differently What The court Should do Is follow The United States Versus California Treatment Of the Due Process Provision Of the Inspection Requirements In United States Versus California Which Is You I Also Want To Address Your Honor's Concerns About Civil Penalties But I Also Want To Make Sure That It   That There Are Civil Penalties Attached To  State    Exist Here To  Point About Standing She Tries To Shoe Horn The State Inspections Under Section 3 As A Violation Of Section 2 I Am  To Point About Standing She Tries To Shoe Horn The State Inspections     Violation      Here To Point About Standing She                   Again Here To Point About Standing She Tries In Due Course The Court Will Now Adjourn
judges: FLETCHER, GOULD, NGUYEN